IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH MILLER, ALMA MILLER,
husband and wife, CHRIS MILLER,
MATT MILLER, SANTA FE PARTNERS I,
a New Mexico Partnership, STEPHEN
GIBBENS, PATRICK COUGHLIN, SUMMIT
PARTNERSHIP 2 and ALTO ELDORADO
PARTERNSHIP,

                Petitioners/Plaintiffs,

v.                                                                Civ. No. 97-309 LH/RLP

COUNTY OF SANTA FE, New Mexico,
SANTA FE COUNTY BOARD OF COUNTY
COMMISSIONERS, RICHARD D. ANAYA,
BETTY PLATTS, JAVIER GONZALES,
MARCOS TRUJILLO and HERMAN RODRIGUEZ,

                Respondents/Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss First Amended Petitions and Complaints (Doc. No. 3). The Court, having read the briefs and being fully advised in the premises, finds that Defendants' motion is well taken and shall be **granted in part.** The remaining state law issues shall be **remanded** to the state court for final determination in that forum.

**I. Overview**

This case is before this Court on removal from the First Judicial District Court in the State of New Mexico. Both groups of plaintiffs[1] in this case filed a first amended petition that allegedly gives rise to grounds for federal jurisdiction and removal, based on the allegations of civil rights violations. The underlying dispute involves alleged delays in approval of applications for new land divisions. Specifically, the Miller Plaintiffs claim that:

> . . .
>
> [T]he Defendants are wholly without right, power or authority to regulate public utilities such as the Eldorado Utility Company and, further, are without right to arbitrarily and capriciously deny the Plaintiffs their rights under statute and county ordinance to lot split and subdivide their property. [See, First Amended Petition for Writ of Mandamus, Writ of Certiorari, Complaint for Violation of Civil Rights, Breach of Contract, Estoppel, Inverse Condemnation, and Injunctive Relieve at ¶52].
>
> In particular, the County is without right, power or authority to prohibit existing and potential customers from taking full advantage of the Eldorado Utility and to effectively curtail and limit the service of this public utility and the rights of the Plaintiffs and their successors to rely upon this public utility as the source of their water in the sale, development, and subdivision of their property [*Id.* at ¶53].
>
> The conduct of the Defendants in destroying the right and ability of the Plaintiffs to utilize the Eldorado Utility Company and to otherwise subdivide and lot split their property is arbitrary, capricious, and without right or foundation and violates the Plaintiffs' rights to substantive due process as guaranteed by the Constitution of the State of New Mexico as well as Plaintiffs' rights to substantive due process under the United States Constitution. These Federal Constitutional rights are enforceable under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 [*Id*. at ¶54].
>
> Additionally, the Defendants permit persons relying upon water from other utility companies and from subsurface sources to fully enjoy their right to be serviced by these other utility companies and by subsurface water and based upon these services to develop and subdivide their property as though they had access to unlimited water. The Village of Lamy and Galisteo water systems rely entirely upon the Galisteo Basin for their water source, while Eldorado relies on the Galisteo Basin only to the extent of about 30% of its

---

[1] The lawsuit filed by Joseph, Alma, Chris and Matt Miller (the "Miller Plaintiffs") was docketed as SF 96-1217 C. The lawsuit filed by Santa Fe Partners 1, Stephen Gibbens, Patrick Coughlin, Summit Partnership 2 and Alto Eldorado ("Santa Fe Partners Plaintiffs") was docketed as SF 96-1260 C.

system [*Id*. at ¶55].

Plaintiffs have now been denied by the Defendants the ability and right to rely upon the Eldorado Utility Company as their source of water and the development and subdivision of their property, in violation of their rights to equal protection as guaranteed by the Constitution of the State of New Mexico as well as the United States Constitution. These Federal Constitutional rights are enforceable under 42 U.S.C. § 1093 and 42 U.S.C. § 1988.[*Id*. at ¶56].

. . .

In the alternative, if the Defendants are within the scope of their power and jurisdiction, or if the aforesaid illegal regulation of the Eldorado Utility Company does not raise to the level of a substantive due process claim, then the Defendants have taken or damaged the Plaintiffs' property within the meaning of N.M.S.A., 1978, § 42A-1-1, et seq., and Article II, Section 20, of the New Mexico Constitution, for which just compensation is deserving. [*Id.* at ¶ 58].

A temporary taking has also occurred as to the Joseph and Alma Miller property, as the County has informed Miller that he cannot use his property for substantially any purpose unless he rescinds his Master Plan approval. [*Id.* at ¶ 59].

The County has neither paid for, nor offered to pay for, the damages which they have inflicted upon the Plaintiffs through this taking or damage to property. [*Id.* at ¶ 60].

As a proximate result of this taking or damage, the Plaintiffs have sustained damages as set forth herein for which Plaintiffs are entitled to compensation. Plaintiffs are also entitled to such further relief provided to persons who have had property taken or damaged without compensation. [*Id.* at ¶ 61].

. . .

Based upon the acts and conduct of the Defendants and the reliance thereon by the Plaintiffs, the Defendants are estopped from now prohibiting the Plaintiffs from seeking and obtaining subdivision and lot split of their properties. [*Id.* at ¶ 63].

In addition, the Miller Plaintiffs' petition contains counts for mandamus, certiorari, inverse condemnation and estoppel.

For their federal substantive due process and equal protection claims, the Santa Fe Partners Plaintiffs allege in the First Amended Petition for Writ of Certiorari, Complaint for Civil

3

Rights Violation:

> If there is an emergency or a concern about water, the concern is, at least, not confined to the Eldorado Utility Company services.  [*Id.*  at ¶ 27].
>
> According to the moratorium ordinance, the County has singled out the Eldorado Utility Company service area for regulation and has ignored all other sources for water to support development within Santa Fe County.  [*Id*. at ¶ 28].
>
> This singling out of the Eldorado Utility Company constitutes a denial of equal protection under the Constitution of the State of New Mexico. [*Id*. at ¶ 29].
>
> . . .
>
> The County by enacting an ordinance in violation of state law and in attempting to unlawfully interfere with the service commitments by the Public Utility Company and the Plaintiffs is acting without right, power, or authority and violates the Plaintiffs' rights to substantive due process and equal protection as provided by the Constitution of the State of New Mexico and the United States Constitution.  Such Federal Constitutional rights are enforced pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. [¶ 34].

In addition, these plaintiffs assert counts for mandamus and certiorari.

## II.  Defendants' Motion to Dismiss First Amended Petitions and Complaints (Docket No 3)

Although officially titled a "motion to dismiss", Defendants alternatively ask this Court to enter summary judgment in their favor, and include a "Statement of Material Fact as to Which There is No Genuine Issue".  (*Id*. at 4).  Defendants attach extrinsic materials to their motion.  In return, Plaintiffs, who filed a joint responsive pleading, attached several documents, including an affidavit and a transcript of an August 23, 1996 hearing to their response brief.

Ordinarily, because the Court has, in its discretion, considered such extrinsic evidence, it would be necessary to convert Defendants' motion into a request for summary judgment under Rule 56, and give the parties appropriate notice of such conversion.  FED.R.CIV.P. 12 (b).  The

4

required notice may be actual or construction, and as noted by the Tenth Circuit in *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1997), in some circumstances, courts have concluded that the submission of evidentiary materials by the movant, the nonmovant, or both of them constitutes sufficient notice. *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986)("[F]ailure to give notice is not reversible error if a party does not attempt to exclude the supporting documents, but files its own sworn affidavits in response.")  Under the circumstances before me, I conclude that the Plaintiffs had adequate constructive notice that this matter could be converted into a summary judgment motion, in that they had opportunity to, and actually did, respond to these extrinsic materials. *See McNair v. Lend Lease Trucks, Inc.*, 62 F.3d 651, 656 (4th Cir. 1995).  Where a party has responded in kind to the movant's attempt to convert the motion, the party cannot later claim unfair surprise. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975).  Furthermore, I conclude that further notice of such a conversion is unnecessary because most of my reliance on extrinsic materials is that of taking judicial notice of the contents of public records, including those in the Stipulated Record of Proceedings.  *See Jefferson v. Lead Industries Ass'n, Inc.*, 106 F.3d 1245, 1250 n.14 (5th Cir. 1997).

Both sides to this dispute have set out what they consider "undisputed facts".  Having compared both sets, I conclude that they basically agree to these facts:

Plaintiff Joe Miller or his agents met or communicated with members of the County's staff 15 times between November 17, 1995 and March 14, 1996.  The purpose of this communication was to inform Miller or his agents about the County's requirements for completion of his subdivision applications.  Exhibit D to Defendant's motion is a January 4, 1996

letter from a county staffer to Miller's engineer, detailing nine matters that were incomplete in Miller's applications. Further correspondence followed. No final decisions on Plaintiffs' development applications have been made. The processing of these applications has been suspended in accordance with a County ordinance, Ordinance 1996-4, adopted on April 26, 1996.

The ordinance recited 47 facts, declared a water supply emergency within the Eldorado Utilities service area, imposed mandatory water conservation measures, and initiated a limited development moratorium within the service area of Eldorado Utilities. The inability of the State Engineer to give a positive opinion about water supply for developments proposing reliance on Eldorado Utilities, combined with many other facts, were cited in the ordinance as reasons for the enactment of the ordinance. The effect of this ordinance was to prohibit any subdivision or lot split from relying upon Eldorado Utilities for water service. The moratorium was to last for a period of one year beginning April 1996, unless Eldorado Utilities satisfied the County in some undefined manner that it was capable of supplying water.

On May 23, 1996, Plaintiffs petitioned the Public Utility Commission ("PUC") for a declaratory order to determine whether Eldorado Utilities is in fact able to service Plaintiffs' planned developments. Recently, PUC staff engineer Steve Schwebke gave prepared testimony in the PUC action indicating that

> . . . EDU [Eldorado Utilities] is incapable of sustaining service for the peak month. Therefore, staff recommends that EDU be required to institute additional reliable sources of supply in order to satisfy the requirements of both Rule 750.12 and the sustained use analysis. In EDU's current condition, they are not able to serve the petitioners /interveners at the level of service requested in this case. In fact, EDU should be restricted from connecting new customers in any area and at any level of use, until they have brought additional reliable sources of supply onto the system such that the above cited

6

requirements are satisfied.

Ex. H to Def. Mot. to Dism. First. Am. Petition and Complaint.

Plaintiffs initially filed two petitions in state district court in Santa Fe, alleging that this ordinance was improperly enacted, that it was illegal and that it violated the rights of the Plaintiffs in various ways. Plaintiffs petitioned for mandamus and certiorari. They alleged that the County's adoption of this ordinance violated their civil rights and that the passage of the ordinance constituted an inverse condemnation or a "taking" of their property. They requested that the County be estopped from denying their development applications.

The two cases were consolidated and then bifurcated to enable the Court to first determine the legality and validity of the ordinance.

On July 1, 1996, the Honorable Judge Michael E. Vigil, state district court judge, made the following findings, that were later incorporated into an August 23, 1996 order:

First Judge Vigil concluded that the remedies requested by the Plaintiffs are available to them under New Mexico law.

Second, he found that the ordinance imposing the moratorium is not a regulation of a utility company. He concluded that the utility company operates under the regulation of the Public Utilities Commission and that it may take steps to remedy the concerns raised by the commission in adopting this moratorium or may choose to do nothing. Judge Vigil specifically rejected petitioners' argument that the moratorium amounts to the regulation of a utility.

Third, Judge Vigil concluded that the ordinance is not void for vagueness. He noted that the ordinance detailed the events leading up to its adoption, the reasons for the adoption, the

concerns of the commission regarding the ability of the utility company to provide adequate water in order to avoid immediate danger to the public health, safety and welfare. Judge Vigil concluded that the commissioners intend to lift the moratorium at such time as they are convinced that the emergency is no longer present.

Fourth, Judge Vigil concluded that, based on the information provided to the county staff, an emergency existed that was an immediate danger to the public health, safety and welfare of the County. He cited the "most glaring example of the emergency situation" as the proposed closing of the Eldorado elementary school due to lack of fire protection caused by low water availability.

Finally, Judge Vigil denied the Petitions for Writ of Mandamus and Writ of Certiorari.

Plaintiffs appealed this ruling to the New Mexico Court of Appeals. On July 1, 1996, that Court dismissed the appeal, ruling that the first phase of the bifurcated case was not a final order.

The County filed a motion to dismiss. The state district court, by order dated February 5, 1997, dismissed the civil rights claims with prejudice because they were claims for damages based solely on alleged violations of state constitutional rights. The court granted Plaintiffs leave to amend to file claims based on alleged federal constitutional rights violations. The inverse condemnation claims were not dismissed, although the court granted a motion for a more definite statement as to that claim, with 10 days given to amend. The Court granted Defendants' motion to dismiss the estoppel claims with prejudice.

Both sets of plaintiffs filed amended petitions on February 12, 1997, as set forth above. On March 10, 1997, the case was removed to federal court.

### A. Legislative Immunity

Defendants claim that they have absolute legislative immunity from Plaintiffs' federal constitutional claims. In response to this argument, Plaintiffs argue that this defense applies only to commissioners or officers named in their individual capacities, *citing Fry v. Board of County Com'rs of the County of Baca, State of Colo.*, 7 F.3d 936 (10th Cir. 1993).

The Supreme Court has held that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities. *Tenney v. Brandhove*, 341 U.S. 367 (1951). The recent case of *Bogan v. Scott-Harris*, 118 S.Ct. 966 (1998) extended such immunity for legislative activities to local legislators. The *Bogan* case quoted from Thomas Cooley's treatise on the law of torts[2] for the proposition that the "rightful exemption" of legislators from liability was "very plain" and applied to members of "inferior legislative bodies, such as boards of supervisors, county commissioners, city councils, and the like." *Bogan* at 971.

Legislative immunity attaches to activities related to the legislative process, but does not apply to administrative and executive activities. The pertinent question, therefore, is whether the adoption of this ordinance was a legislative act. The legislative-executive action dichotomy arises frequently in land use cases. The Tenth Circuit has ruled that a resolution of county commissioners to vacate a proposed road was within absolute legislative immunity. *Fry* at 942. The New Mexico Court of Appeals just decided a case that determined that the adoption of a comprehensive zoning ordinance serves a legislative, as opposed to an adjudicative function. *See Miles et al. v. Bd. of Cty. Comm. of the Cty. of Sandoval, N.M.*, No. 18,186 (N.M.Ct.App., filed July 7, 1998). *See also Downtown Neighborhoods Ass'n v. City of Albuquerque,* 109 N.M. 186,

---

[2]T. COOLEY, LAW OF TORTS 376, n.1 (1880).

189 (Ct. App. 1989)("[t]he decision to enact an ordinance is legislative in nature, made by an elective body under its police powers for the protection of the health, safety, and welfare of the public.")  *See* Judith Welch Wegner, *Moving Toward the Bargaining Table:  Contract Zoning Development Agreements, and the Theoretical Foundation of Government Land Use Deals,* 65 N.C.L.Rev. 957, 1012 (1987)("It is clear that the adoption of a comprehensive zoning ordinance serves a legislative function because it raises broad, general questions of public policy.")  *See also Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1392-93 (11th Cir. 1993), *cert. denied*, 114 S.Ct. 1400 (1994)(held city council members were absolutely immune for rezoning property and adopting construction moratorium ordinances because these are legislative actions.)

Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Tenney*  at 376.  Plaintiffs have not alleged any actions by the named individual commissioners that are unrelated to the passage of this ordinance.  The only basis for Plaintiffs' claims of civil rights violations arise from the enactment of Ordinance 1996-4.

Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.  *Bogan* at 973.  As a general matter, when a governing body renders a decision based on "legislative facts," such as "broad generalizations concerning a policy or state of affairs," the decision is legislative.  *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir. 1984).  Bearing this precedent in mind, I conclude that the individual commissioners' actions were legislative; they were integral steps in the legislative process.  Here, the ordinance in question bears all the hallmarks of traditional legislation.  For these reasons, the individually named defendants are entitled to absolute legislative immunity.  In other words, this matter shall be treated as an official-capacity suit that will, in all respects other than name, be treated as a suit

against the County.

It now becomes incumbent upon the Court to evaluate the merits of Plaintiffs' claims.

### B.  Mandamus, Certiorari and Estoppel Claims

The claims for mandamus and certiorari are based upon the premise that the County enacted this moratorium ordinance "without right or justification", Miller Plaintiffs' First Amended Petition at ¶ 44, by taking actions that are "arbitrary, capricious and contrary to law" (*Id*. at ¶ 49).  The allegations are virtually identical to those raised by these Plaintiffs in their original petition.  In his August 23, 1996 order, Judge Vigil denied the Petitions for Writ of Mandamus and Writ of Certiorari.  The Miller Plaintiffs appear to argue that this ruling does not apply to their claim for mandamus and that they still have a pending claim for mandamus.  I have reviewed the transcript of the presentment hearing on the order covering this topic and note that Judge Vigil stated he would grant the County's proposed order that denied the writ of mandamus and writ of certiorari, despite arguments made to him by Plaintiffs' counsel that the Miller Plaintiffs' claim should not be foreclosed.  As stated in my Memorandum Opinion and Order dealing with Plaintiffs' Motion for Reconsideration and Certification, I intend to rely on the findings of the state court judge, given the absence of any changes in the underlying facts or law since the time of Judge Vigil's decision.  To the extent that there remains any confusion about the viability of this mandamus claim of the Miller Plaintiffs, Judge Vigil will have the opportunity to address such confusion on remand, as ordered below.

As I read Judge Vigil's February 5, 1997 order, Plaintiffs' claim of estoppel was dismissed with prejudice.  This order shall stand.

### C.  Federal Civil Rights Claims

11

Plaintiffs' various allegations regarding civil rights violations are quoted extensively above. Paragraph 52 of the Miller Plaintiffs' amended petition contends that the Defendants are without right, power or authority to regulate public utilities. Judge Vigil found that the ordinance is not a regulation of a utility company. He specifically rejected the argument that enactment of the ordinance amounts to regulation of a utility. These findings effectively dispose of the Miller Plaintiffs' allegations contained in Paragraphs 52 and 53.

Paragraph 54 of the Miller Plaintiff's amended petition alleges that unspecified conduct of the Defendants destroyed the right and ability of the Plaintiffs to utilize Eldorado Utility Company and to otherwise subdivide and lot split the property and that such conduct was arbitrary, capricious and without right or foundation, violating their substantive due process rights. This paragraph refers to Defendants "destroying the right and ability of the Plaintiffs to utilize the Eldorado Utility Company", which I interpret as a challenge to Ordinance 1996 - 4. For this reason, I will evaluate whether adoption of this ordinance meets applicable federal substantive due process requirements.

Paragraph 34 of the Santa Fe Partners Plaintiffs' amended petition states that the County, by enacting the ordinance is making an attempt to "unlawfully interfere with the service commitments by the Public Utility Company and the Plaintiffs [and] is acting without right, power or authority and violates the Plaintiffs' rights to substantive due process and equal protection." Paragraphs 27-29 of the amended petition allege that the County has singled out the Eldorado Utility Company service area for regulation and has ignored all other water sources to support this development, and that this "singling out" constitutes a denial of equal protection.

**(a)  Due Process Analysis**

The legislative act of passing a zoning ordinance is subject to the substantive due process requirement outlined in *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). The *Village of Euclid* case established that zoning regulations will not be declared unconstitutional as violative of substantive due process unless they "are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id. See also City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668 (1976). In the legislative context discussed in *Euclid*, once a zoning ordinance is found to be reasonable, "nothing more is required by the Constitution." *Id.* at 677.

Here, Judge Vigil made specific conclusions that an emergency existed and that there was an immediate danger to the public health, safety and welfare of the County. One specific situation he mentioned was the proposed closing of the Eldorado elementary school due to lack of fire protection caused by low water availability. Based on these findings of Judge Vigil and a lack of any dispute of these facts in the record before me, I conclude that this ordinance is reasonable, that in trying to protect the health, safety, and welfare of the County, the Defendants acted rationally, and that "nothing more is required by the Constitution." *Id.*

Plaintiffs' briefs are poorly written, however I interpret their other position to be that they were in fact entitled to approval of their applications, prior to the enactment of this ordinance.[3] They seem to argue that the County's reliance upon its own wrongful administrative delay works to violate their rights to due process, and cite *Eldorado at Santa Fe., Inc. v. Board of County Com'rs. of Santa Fe County,* 89 N.M. 313 (1976) for the proposition that when a plat or other

---

[3] I base this interpretation on language contained in ¶54 of the Miller Plaintiffs' First Amended Petition: "The conduct of the Defendants . . . to otherwise subdivide and lot split the property is arbitrary, capricious, and without right or foundation and violates the Plaintiffs' rights to substantive due process . . ..

13

application is presented which complies with appropriate requirements, a governmental entity cannot impose delays.  It seems to be their argument that the County's delaying the application process was a violation of their right to substantive due process.

There are undisputed factual problems with Plaintiffs' position.  According to the limited record before me, on January 4, 1996, the County sent a letter to Millers' engineer, outlining nine incomplete aspects to the Millers' application.  (Mot. to Dismiss First Amended Petitions and Complaints, Exhibit D).  As of March 14, 1996, only one of these items had been completed:  the filing of the amended master plan.  (See, *Id*., Exhibit E).  According to Exhibit E, further information was requested in a February 15, 1996 letter  by the State Engineer, who found the subdivider's development report to be deficient.  This letter, Exhibit F,  stated:  "[U]ntil such time as the State Engineer Office has received and reviewed the information requested by the county from Eldorado Utilities, it is the opinion of the State Engineer Office that the subdivider has not demonstrated that he is in compliance with the requirements of the Santa Fe County Land Development Code, or that he can fulfull the proposals in his disclosure statement concerning water."

Although the Miller Plaintiffs state generally that they were in "full compliance" with the state statute and county ordinances (Resp. to Mot. to Dismiss, ¶32), they do not specifically rebut Exhibits D, E and F that establish the contrary proposition.   Furthermore, other than their assertion that they were in "full compliance", they do not dispute the propriety of the nine deficiencies, outlined in the January 4, 1996 letter, Exhibit D.  The only specific factual assertion made by Miller Plaintiffs in this regard is contained in ¶43 of their Response to the Motion to Dismiss:  "In March of 1996, Miller attempted to move the subdivision into the preliminary plat

14

approval stage before the CDRC.  The County refused to place his application on the CDRC because Miller had not obtained septic permits from the State Engineer's Office.  This was not required by Code or otherwise."  To support this fact, Plaintiffs Miller refer the Court to a letter from their lawyer.  This is not competent evidence.  Furthermore, Plaintiffs Miller were informed of the requirement for a liquid waste plan, approved by the Environment Department, in the January 4, 1996 letter (Exhibit D).

It appears undisputed and material that Plaintiffs Miller never submitted a water budget establishing the anticipated water needs of his planned development as required by both the County Land Development Code and the State Engineer.

Because Plaintiffs have not raised a sufficient issue of fact as to whether the Defendants were irrational or arbitrary in enacting this ordinance, Defendants' motion for summary judgment with respect to Plaintiffs' substantive due process challenge shall be **granted**.

### (b)  Equal Protection Analysis

A violation of equal protection occurs when the government treats someone differently from another who is similarly situated. *See Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985);  *Jacobs, Visconsi & Jacobs, Co.*, 927 F.2d 1111, 1118 (10th Cir. 1991).

Paragraphs 55 and 56 of the Miller Plaintiffs' First Amended Petition allege violations of their rights to equal protection, while Paragraphs 27-29 and 34 constitute the equal protection allegations in the amended petition from the Santa Fe Partners Plaintiffs.  The gist of Plaintiffs' petitions is that the Eldorado Utility Company service area has been regulated differently than

15

other utility's service areas. [4]

Defendants argue that this moratorium advances a legitimate interest in the health and safety of county inhabitants and is a valid exercise of county police power and of express and implied county authority, *citing Brazos v. Board of County Commissioners of Rio Arriba County,* 115 N.M. 168 (Ct.App. 1993).[5]

As with substantive due process challenges to zoning, the rational basis inquiry applies to equal protection challenges to zoning.  *Grant v. Seminole County*, 817 F.2d 731, 735 (11th Cir. 1987).  As stated above and as found by Judge Vigil, this legislation involves a legitimate government purpose, that of protecting the health, safety and welfare of the County.  Secondly, a rational basis exists for believing that this legislation would further this purpose.  There is a plausible, arguably legitimate purpose for application of this ordinance to these Plaintiffs, and summary judgment is appropriate in the absence of a showing by them that the County was not relying on this purpose in its application of the moratorium to them. *See Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995).

In the end, even if Plaintiffs were singled out for different treatment, the County has provided a rational explanation for why it has treated Plaintiffs' property as it has.  Because Plaintiffs have not demonstrated that they were irrationally singled out for differential treatment, Defendants' motion for summary judgment on this claim is hereby **granted**.

### (3)  Inverse Condemnation

---

[4] I once again note that Judge Vigil has already concluded that Defendants are not regulating the Eldorado Utility Company with this ordinance.

[5] While it is unnecessary to address it, the Court notes an argument of Defendants that, where water concerns result in enactment of a temporary moratorium by a local government, that delay does not rise to constitutional dimensions, *citing Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1236 (9th Cir. 1993).

The Miller Plaintiffs bring this claim in ¶¶ 58-61 of their First Amended Petition, and allege damage pursuant to N.M.Stat.Ann. § 42A-1-1(Michie 1994) and Article II, Section 20, of the New Mexico Constitution.  At this juncture, this Court has dismissed all claims over which it has original jurisdiction.  Pursuant to 28 U.S.C. § 1367(c)(3), this fact justifies a refusal to exercise supplemental jurisdiction over the sole remaining state law claim.  This Court shall therefore decline to exercise supplemental jurisdiction and hereby remands this claim of inverse condemnation to the court of the New Mexico First Judicial District from which it was removed.

**WHEREFORE, IT IS ORDERED** that Defendants' Motion to Dismiss First Amended Petitions and Complaints (Docket No. 3) is **granted** with regard to all of Plaintiffs' claims against named Defendants in their individual capacity.  Further, this motion is **granted** as to Plaintiffs' claims for mandamus as to the Santa Fe Partners Plaintiffs only.  This motion is also granted on Plaintiffs' claims for certiorari, estoppel, due process violations, and equal protection violations.  All of these claims are **dismissed with prejudice**.  The remaining claims for inverse condemnation and mandamus, as sought by the Miller Plaintiffs, are hereby **remanded** to the First Judicial District Court in the State of New Mexico.

**IT IS SO ORDERED.**

_____
**UNITED STATES DISTRICT JUDGE**